JOURNAL ENTRY AND OPINION
Plaintiff-appellant, individually and as administratrix of the Estate of Brian Bradley, appeals from the judgment of the Cuyahoga Court of Common Pleas denying her motion for a new trial and/or for judgment notwithstanding the verdict. For the reasons that follow, we reverse and remand for a new trial of appellant's claims against University Hospitals of Cleveland, Inc. and Miguel Ayup, M.D. only.
On May 12, 1999, appellant filed the instant medical malpractice action seeking damages for the death of Brian Bradley, who died on May 20, 1998. Appellant named as a defendant Bradley's primary care physician, Dr. Carol Noall, and her employer Prime Health, Inc. (collectively referred to herein as Dr. Noall). Appellant alleged that Dr. Noall, who had treated Brian for an ear infection on the day before his death, failed to timely refer Bradley for emergency treatment of bacterial meningitis, thereby contributing to his death.
Appellant also named as defendants University Hospitals of Cleveland, Inc. and two of its physicians, Miguel Ayup, M.D. and Dariush Saghafi, M.D. (collectively referred to as the UH defendants). Appellant's claim against the UH defendants was that after Bradley was transferred to University Hospitals on a mechanical ventilator for life support, Dr. Ayup negligently ordered the removal of his breathing tube, which proximately caused his death.
Appellant also sought damages for conscious pain and suffering, pursuant to R.C. 2305.21, alleging that in the one and one-half hours between the alleged wrongful extubation and subsequent reintubation, Bradley struggled to breathe and was suffocating because of inadequate oxygenation.
In November, 2000, the parties tried the case to a jury. At the close of appellant's case, the trial court directed a verdict in favor of the UH defendants on appellant's conscious pain and suffering claim. The trial court also granted a directed verdict in favor of Dr. Saghafi. The trial court also denied Dr. Noall's, University Hospital's and Dr. Ayup's motions for directed verdicts regarding appellant's wrongful death claim.
The jury subsequently returned a verdict in favor of the remaining defendants, finding that Dr. Noall had not breached the standard of care and that Dr. Ayup's negligence was not a proximate cause of Bradley's death.
Following trial, appellant filed a motion for a new trial and/or judgment notwithstanding the verdict. The trial court denied appellant's motion. Appellant timely appealed from the denial of that motion, raising six assignments of error for our review. The assignments of error are set forth in an appendix to this opinion.
A. Scope of Our Review
Initially, this court must consider its jurisdiction in this matter in light of the fact that appellant has appealed only from the trial court's order denying her motion for a new trial and/or judgment notwithstanding the verdict.
Appellant's third assignment of error asserts that the trial court erred when, prior to trial, it denied her motion for a default judgment against Dr. Ayup due to his alleged failure to appear for deposition and, instead, entered an order finding that he had breached the standard of care. In her fourth assignment of error, appellant asserts that the trial court erred when, prior to trial, it denied the production of three pages of nursing notes regarding Bradley's care and treatment. Appellant's sixth assignment of error asserts that the trial court erred in granting Dr. Saghafi's motion for directed verdict at the close of all the evidence.
App.R. 3(D) provides in pertinent part: the notice of appeal * * * shall designate the judgment, order or part thereof appealed from * * *. Here, appellant's notice of appeal designates only the trial court's order denying her motion for a new trial and/or motion for judgment notwithstanding the verdict as the order being appealed from.
Appellant did not raise the trial court's denial of her motion for a default judgment against Dr. Ayup, the denial of her motion to compel the production of the nursing notes or the trial court's granting of a directed verdict in favor of Dr. Saghafi, however, in her motion for a new trial and/or judgment notwithstanding the verdict. Consequently, the trial court order regarding appellant's motion does not encompass rulings on these issues. Appellant's notice of appeal, which designates only the trial court's order denying her motion as the order being appealed from, likewise does not encompass these issues.
It is well established that a court of appeals lacks subject matter jurisdiction to review judgments or orders not designated in a proper notice of appeal. In re: Marquis Adkisson (Aug. 3, 2000), Cuyahoga App. No. 76327, unreported. We conclude, therefore, that we lack jurisdiction to consider appellant's third, fourth and sixth assignments of error.
B. Jury Instructions
In her first assignment of error, appellant contends that the trial court erred in instructing the jury that in order to find for appellant and against the UH defendants, the jury had to find that Bradley's chances of survival upon admission to UH were greater than 50%. We agree.
In medical malpractice cases, the general rule is that the plaintiff must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence. Roberts v. Ohio Permanente Medical Group, Inc. (1996), 76 Ohio St.3d 483, 485, citing Shumaker v. Oliver B. Cannon Sons, Inc. (1986), 28 Ohio St.3d 367. Thus, under traditional causation principles, a plaintiff has to prove that with proper diagnosis and treatment, he had a greater than 50% chance of survival because if the plaintiff's (or plaintiff's decedent's) chance of survival was below 50%, he cannot mathematically show that it was more probable than not that the defendant caused the resulting injury or death. See Cooper v. Sisters of Charity of Cincinnati, Inc. (1971), 27 Ohio St.2d 242; Reuscher, McMullen v. Ohio State University Hospitals: This Isn't Vegas, But Don't Tell the Courts — Playing with Percentages and the Loss-of-Chance Doctrine (2001), 34 Akron L.Rev. 767.
In Roberts v. Ohio Permanente Medical Group, Inc. (1996),76 Ohio St.3d 483, however, the Ohio Supreme Court adopted the loss-of-chance theory of recovery, holding that a health care provider should not be insulated from liability where there is expert medical testimony showing that he or she reduced the patient's chances of survival, even if that patient had a less-than-even chance of survival. As explained by the Supreme Court, the loss-of-chance theory is usually applied in cases where the plaintiff or plaintiff's decedent is already suffering from some injury, condition or disease and the health care provider negligently diagnoses the condition, fails to render proper aid or provides treatment that actually aggravates the condition. McMullen v. Ohio State University Hospitals (2000), 88 Ohio St.3d 332, 338-339. As a result, the underlying condition is allowed to progress, or is hastened, to the point where the inevitable consequences become manifest. Unable to prove that the provider's conduct is the sole and only cause of the harm, the plaintiff relies on the theory that the provider's negligence at least increased the risk of injury or death by denying or delaying treatment that might have inured to the victim's benefit. The focus then shifts away from the cause of the ultimate harm itself, and is directed instead on the extent to which the defendant's negligence caused a reduction in the victim's likelihood of achieving a more favorable outcome. Id.
Under the loss-of-chance theory, damages are awarded in direct proportion to the chance of survival or recovery that the plaintiff lost. Thus, rather than compensating the plaintiff for all damages allowed in a malpractice or wrongful death action, the defendant is liable only for those damages attributable to his percentage of negligence. Roberts, supra at 489.
Significantly, however, as the Supreme Court of Ohio made clear in McMullen, supra, a plaintiff with a less-than-even chance of recovery or survival is not required to adopt the loss-of-chance theory in his or her medical malpractice action if he or she can prove a direct causal relationship between the defendant's negligence and the decedent's death. In other words, even where a plaintiff or the plaintiff's decedent had a less than 50% chance of survival, where the plaintiff can demonstrate that the specific acts of the defendant caused the ultimate harm, Id. at 337, the plaintiff may recover full damages.
Here, the trial court instructed the jury:
 If the jury finds that Brian Bradley had a less than 50% chance of survival when he arrived at University Hospital, then your verdict must be for University Hospitals.
This instruction was in error, however, in light of McMullen.
The UH defendants' expert, Dr. Gebel, testified that Bradley had only a 10% to 20% chance of surviving the meningitis upon his admission to University Hospitals. Appellant's expert, Dr. Hoyt, testified, however, that regardless of Bradley's chance of survival, he believed that the removal of Bradley's breathing tube by Dr. Ayup proximately caused Bradley's death. Thus, as required by McMullen, there was evidence that even though Bradley had a less-than-even chance of survival of the meningitis, Dr. Ayup's negligent extubation was the immediate and sole proximate cause of Bradley's death. Accordingly, pursuant to McMullen, the trial court erred in instructing the jury that it could not find for appellant and against the UH defendants unless Bradley had a greater than 50% chance of survival when he arrived at University Hospitals.
In its opinion and order denying appellant's motion for a new trial and/or judgment notwithstanding the verdict, the trial court opined that its charge was warranted because appellant had explicitly disclaimed the loss-of-chance theory of recovery against the UH defendants. The trial court apparently believed that if appellant did not pursue a loss-of-chance theory, she was limited to a traditional malpractice action, which requires evidence that the plaintiff had a greater than 50% chance of survival before the plaintiff may recover any damages. This reasoning ignores the clear import of McMullen, however, which holds that even where a plaintiff has a less-than-even chance of survival or recovery, he can recover full damages if he demonstrates that the health care provider's negligence set in motion another, independent force that directly caused [the decedent's] death. Id. at 341.
The UH defendants argue that McMullen only applies, however, when the negligent act is the only act that caused the decedent's death and here, the negligent act combined with the meningitis to cause Bradley's death. Although the UH defendants' interpretation of McMullen is correct, the jury in this case was precluded from determining whether or not the extubation was the sole cause of death because the jury instruction erroneously required that they first find that Bradley had a greater than 50% chance of survival upon his arrival at University Hospitals before reaching the issue of the cause of his death.
Accordingly, we hold that the trial court's jury instruction regarding a greater than 50% chance of survival was in error. The instruction was given with respect to the liability of University Hospitals and Dr. Ayup and, accordingly, we reverse and remand for a new trial as to only those defendants.
We reject appellant's contention, however, that reversal with respect to the UH defendants also requires reversal with respect to Dr. Noall on appellant's separate claims against her. Despite counsel's adamant assertion at oral argument that she objected to the jury instructions regarding Dr. Noall, the transcript clearly reflects that appellant did not object to the instructions given with respect to Dr. Noall. Indeed, counsel specifically informed the trial court that with respect to Dr. Noall, we'll just go on the straight, you know, probability standard of Cooper, which the record reflects was the charge given. Pursuant to Civ.R. 51(A), a party's failure to object at trial to a jury instruction waives that party's right to raise the issue on appeal. Moreover, this court is authorized to order a retrial of only those issues which resulted in prejudicial error. State Farm Fire Casualty Co. v. Chrysler Corp. (1988), 37 Ohio St.3d 1, 5. Finding no prejudicial error with respect to the jury instructions regarding Dr. Noall, we decline to reverse the jury verdict in her favor.
Appellant's first assignment of error is sustained with respect to University Hospitals and Dr. Ayup.
C. Appellant's claim for conscious pain and suffering
In her second assignment of error, appellant asserts that the trial court erred when it directed a verdict in favor of the UH defendants on her survival claim for wrongful pain and suffering. We agree.
Civ.R. 50(A)(4) governs the granting of a motion for a directed verdict on the evidence. It provides:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party on that issue.
The trial court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 119, quoting Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. Rather, the court is confronted solely with a question of law: was there sufficient material evidence presented at trial on this issue to create a factual question for the jury? Malone v. Courtyard by Marriott (1996),74 Ohio St.3d 440, 445.
In Laverick v. Children's Hospital Med. Ctr. of Akron (1988),43 Ohio App.3d 201, 202, the court summarized the law concerning recovery for pain and suffering in a survival action as follows:
 A decedent may not recover for pain and suffering when it is shown that the decedent was rendered unconscious at the instant of the injury and dies of such injuries without ever having regained consciousness. However, one may recover for the pain and suffering endured when there is affirmative evidence to show that the decedent was not completely unconscious during the interval between the injury and death. (Citations omitted).
Here, there was sufficient evidence to demonstrate that Bradley was not completely unconscious during the one and one-half hour interval between the extubation and his death. One of the UH defendants' experts, Dr. Gerald Grossman, testified on cross-examination that it was likely that Dr. Ayup extubated Bradley in an attempt to make him more comfortable because he was thrashing and had become extremely agitated. Significantly, Dr. Grossman testified further that such thrashing and agitation indicated that Bradley was not in a deep coma. Moreover, Rebecca Gemmell, Bradley's nurse in the Intensive Care Unit, testified that immediately prior to the extubation, Bradley was awakening from sedation and his pupils were brisk and reactive. In addition, the medical records reflect that she rated Bradley's level of consciousness at two, which means, as indicated by the legend on the chart, that the patient was non responsive to verbal stimuli but responsive to pain. Gemmell specifically testified that Bradley was only in a light coma and not completely comatose. Given this evidence, reasonable minds could reach different conclusions as to whether Bradley was conscious and, therefore, the matter was a question of fact for the jury to resolve.
The UH defendants argue that this evidence was insufficient, however, because only expert testimony is competent regarding the issue of consciousness. We are not persuaded. Harris v. Mt. Sinai Medical Center (May 28, 1998), Cuyahoga App. No. 72668, the only case upon which appellees rely to support their argument, merely stands for the proposition that feelings, as opposed to observations, regarding whether an individual is conscious or unconscious, are insufficient to prove consciousness. It does not mandate expert testimony in every case to prove consciousness.
Ohio has long recognized that there is an exception to the general rule which permits a non-expert witness to express his or her opinion. Crane v. Lakewood Hospital (1995), 103 Ohio App.3d 129, 133. The exception is made for testimony which is a compound of fact and opinion. A prime example is that of the non-expert witness testifying as to physical condition. The witness is permitted to testify in the form of a conclusion because the primary facts gained from observation and upon which the conclusion is based are too numerous to detail. Id.
Thus, under Evid.R. 701, a lay witness may give his or her testimony in the form of opinions or inferences * * * which are 1) rationally based on the perception of the witness, and 2) helpful to a clear understanding of [the] testimony or the determination of a fact in issue. Accordingly, where lay witness opinion regarding consciousness is based on recited personal observations, expert testimony is not necessary to establish that an individual is conscious. See, e.g., Flory v. The New York Central Rd. Co. (1959), 170 Ohio St. 185.
The UH defendants' assertion that appellant did not produce evidence that the wrongful extubation caused Bradley's conscious pain and suffering is similarly without merit. Appellant's expert, Dr. Hoyt, testified that Bradley struggled to breathe as a result of the extubation and that he was suffocating because of inadequate oxygenation.
In light of this evidence, the trial court erred in directing a verdict in favor of the UH defendants on appellant's claim for conscious pain and suffering.[1] Appellant's second assignment of error is therefore sustained.
C. Appellant's Motion for a New Trial and/or Judgment Notwithstanding the Verdict
In her fifth assignment of error, appellant asserts that the trial court erred in denying her motion for a new trial and/or judgment notwithstanding the verdict. In light of our resolution of appellant's first and second assignments of error, this assignment of error is moot and, therefore, we need not consider it. App.R. 12(A)(1)(c).
D. Dr. Noall's Cross-Assigment of Error
In her brief on appeal, Dr. Noall asserts a cross-assignment of error, contending that the trial court erred in denying her motion for a directed verdict. We do not have jurisdiction to consider Dr. Noall's cross-assigment of error, however, because she did not file a notice of appeal of the trial court's order.
App.R. 4(B)(1) provides that if a notice of appeal is timely filed by a party, another party may file a notice of appeal within the appeal time period otherwise prescribed by this rule or within ten days of the filing of the first notice of appeal.
Here, appellant timely filed her notice of appeal on January 16, 2001. Although Dr. Noall subsequently filed a motion to dismiss appellant's appeal, she never filed a notice of her appeal of the trial court's order denying her motion for a directed verdict. As discussed in Section A of this opinion, a court of appeals lacks jurisdiction to review judgments or orders not designated in a proper notice of appeal. Accordingly, we lack jurisdiction to consider Dr. Noall's cross-assignment of error.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is therefore ordered that appellant recover costs herein from appellees University Hospitals of Cleveland, Inc. and Miguel Ayup, M.D. only.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J. and JAMES J. SWEENEY, J., CONCUR.
[1] We note that appellant's claim for conscious pain and suffering is reinstated with respect to University Hospitals and Dr. Ayup only. Appellant specifically limited her claim against Dr. Saghafi to a claim for negligent supervision only and the trial court directed a verdict in favor of Dr. Saghafi regarding appellant's claim because there was no evidence to support it.
 APPENDIX I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ERRONEOUSLY INSTRUCTED THE JURY THAT TO FIND FOR THE PLAINTIFF, IT MUST FIND THAT UPON HIS ADMISSION TO UNIVERSITY HOSPITALS, THE PLAINTIFF'S DECEDENT, BRIAN BRADLEY, HAD A GREATER THAN FIFTY PERCENT CHANCE OF SURVIVAL.
 A. THE TRIAL COURT'S JURY INSTRUCTION WITH RESPECT TO CHANCE OF SURVIVAL WAS DIRECTLY CONTRARY TO THE OHIO SUPREME COURT'S HOLDING IN McCULLEN v. OHIO STATE UNIVERSITY HOSPITALS (2000), 88 Ohio St.3d 332.
 B. THE TRIAL COURT CLEARLY CONFUSED THE HOLDING IN McCULLEN WITH THE LOSS OF CHANCE DOCTRINE.
 C. THE TRIAL COURT'S ERRONEOUS JURY INSTRUCTION ALSO REQUIRES REVERSAL AS TO DR. NOALL.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DIRECTED A VERDICT IN FAVOR OF THE UH DEFENDANTS ON PLAINTIFF'S SURVIVAL CLAIM.
 A. THERE WAS EVIDENCE FROM WHICH THE FACT FINDER COULD CONCLUDE THAT AT THE TIME OF HIS EXTUBATION, BRIAN BRADLEY WAS AWAKE AND THEREAFTER STRUGGLED TO BREATHE AND WAS SUFFOCATING.
 B. EVEN IF THIS COURT AFFIRMS THE JURY'S VERDICT ON THE WRONGFUL DEATH CLAIM, PLAINTIFF IS ENTITLED TO HAVE HER SURVIVAL CLAIM FOR PAIN AND SUFFERING REMANDED FOR A TRIAL ON THE MERITS.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND FOR ATTORNEYS' FEES AGAINST DR. AYUP AND INSTEAD IMPOSED A LESSER SANCTION THAT ACTUALLY BENEFITED DR. AYUP.
 A. PLAINTIFF WAS ENTITLED TO A DEFAULT JUDGMENT AGAINST DR. AYUP.
 B. PLAINTIFF WAS ENTITLED TO AN AWARD OF ATTORNEYS' FEES INCURRED IN PREPARING THE TWO MOTIONS TO COMPEL, AND THE TWO MOTIONS FOR DEFAULT JUDGMENT WITH RESPECT TO DR. AYUP'S NON-COMPLIANCE WITH DISCOVERY.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF REBECCA NOWAK GEMMEL'S THREE PAGES OF NURSING NOTES CONCERNING BRIAN BRADLEY'S CARE AND TREATMENT.
 A. THE UH DEFENDANTS FAILED TO MEET THEIR BURDEN OF ESTABLISHING THAT NURSE GEMMEL'S THREE PAGES OF NOTES WERE PREPARED IN ANTICIPATION OF LITIGATION.
 B. EVEN IF NURSE GEMMEL'S THREE PAGES OF NOTES ARE WORK PRODUCT, PLAINTIFF STILL ESTABLISHED GOOD CAUSE FOR THEIR PRODUCTION. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PLAINTIFF'S MOTION FOR A NEW TRIAL AND/OR FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PLAINTIFF'S MOTION FOR A NEW TRIAL AND/OR FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 VI. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT GRANTED A DIRECTED VERDICT IN FAVOR OF DEFENDANT DR. SAGHAFI.